357 So.2d 846 (1978)
Sonya A. ARELLANO and Linda L. McCarthy
v.
Harry HENLEY and Libby Levin, d/b/a Antebellum Antiques and XYZ Insurance Company.
No. 8898.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1978.
*847 Murray, Murray, Ellis & Braden, Julian R. Murray, Jr., New Orleans, for plaintiffs-appellees.
Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Lawrence S. Kullman, New Orleans, for defendant-appellant, Harry Henley.
Before BOUTALL, SCHOTT and GARSAUD, JJ.
GARSAUD, Judge.
This suit for false arrest was brought by plaintiffs-appellees Sonya Arellano and Linda McCarthy, against defendants Harry Henley and Libby Levin. Defendant Levin filed a reconventional demand against the plaintiffs for defamation. After a trial on the merits, judgment was rendered in favor of plaintiff Arellano for $1,000 and in favor of plaintiff McCarthy for $500, both against defendant Harry Henley. Plaintiffs' claims against Libby Levin were dismissed, as was Levin's reconventional demand against plaintiffs. Defendant Henley has appealed from the trial court's judgment.
This is an action for damages under Article 2315 of the Civil Code, alleging fault on the part of the defendant in causing the plaintiffs' false arrest by police officers of the City of New Orleans. There is no question that under these circumstances, plaintiffs were falsely arrested by officers of the New Orleans Police Department. "When there is no warrant, police may arrest only when the one arrested has committed a felony, or has committed a misdemeanor in his presence, or at least `has reasonable cause to believe that the person to be arrested has committed an offense.' C.Cr.P. 213." State v. Finklea, 313 So.2d 224 (La. 1975). On the basis of the information available to the policemen, and in particular the testimony elicited from the two plaintiffs when the police visited their home to get their version of the incident, the police did not have probable cause to make an arrest without a warrant. In fact, this Court wonders whether any magistrate or district judge would have issued an arrest warrant on the facts of this case. It is noted that the District Attorney refused to accept charges in this instance. It is dismaying that the plaintiffs had to experience the degrading and humiliating arrest and subsequent police booking procedures at Central Lockup, including crude and totally unnecessary sexual references made by a police officer. Nevertheless, the question here is not the liability of the police, but the liability of the defendant, who provided certain information to the police which, for reasons known only to the officers, prompted their arrest of the plaintiffs.
Plaintiffs' false arrest stemmed from a visit they paid to defendant Henley's place of business, Antebellum Antiques, on November 8, 1975. A substantial number of the facts relating to this shopping visit to Antebellum Antiques are not disputed. The defendant Henley showed the plaintiffs a number of bracelets for their consideration. Plaintiffs ultimately purchased several bracelets. In considering their purchase, the plaintiffs were quite interested in a certain silver bracelet priced at about $45, which they eventually decided not to purchase due to its cost. After paying for the bracelets, by check on the part of one plaintiff and by cash on the part of the other plaintiff, the young women returned to their apartment only to receive a telephone call from Henley asking whether they had accidentally or by mistake taken the $45 bracelet. They both indicated to the defendant that they had not taken the bracelet.
Facts at issue between the parties deal with certain events while plaintiffs were viewing the jewelry in the store. All parties agree that one of the bracelets purchased had a broken catch on it, which Henley repaired. Plaintiffs' version is that Henley left the counter to go back to another area of the store to retrieve his tools in *848 order to repair the catch and then returned, all of which occurred prior to his showing them the bracelet in question. Henley's version is that he showed the bracelet to the plaintiffs prior to going to the other part of the store for his tools, and thus plaintiffs were left alone at the counter with the $45 bracelet in full view. Plaintiffs testified that they left the store casually, in fact looking at an antique baby carriage for one or two minutes at the door entrance before leaving. Henley testified that they left hurriedly. The third point of difference is that plaintiffs testified that there was a woman customer in the store at the time the plaintiffs were there viewing the bracelets. This fact was not brought out in the investigation, as plaintiffs were not asked the question nor did they volunteer it. This latter failure was attributed to their total distress at the time. Henley testified that there was no other person in the store at that time, but that a male customer came in just as the two plaintiffs were leaving, and the male customer spent a few minutes in the store in full view of Henley and then left. Defendant's version of the incident is reflected in the investigating officer's report.
After his phone call to the plaintiffs, Henley searched the entire store with Ms. Levin's help for about 20 to 30 minutes, and could not find the bracelet; after which he phoned the police to report the loss. Henley indicates that his major reason for reporting the loss was for purposes of his tax records as well as for filing an insurance claim. When the police arrived, Henley specifically indicated that he did not know who stole the bracelet. In answer to the question, "Was there anyone in the store at the time?" Henley said, "There were two girls in the shop." The investigating officer then asked, "Was anyone else in the shop?," and Henley replied, "No, there wasn't." At trial, in response to the question, "Did you tell the police that you had seen these girls take the bracelet?," Henley's answer was, "No, sir, I made a point of telling him that I could not accuse them of taking the bracelet because I did not physically see them take it." The record further indicates that Mr. Henley did not swear out a complaint for their arrest, nor did he encourage their arrest in any other fashion.
We are called upon to decide whether these actions on the part of the defendant constituted fault under Article 2315 so as to entitle these plaintiffs to damages for the injuries which they have certainly suffered. This court in Jones v. Simonson, 292 So.2d 251 (La.App. 4th Cir. 1974), aptly set forth the applicable considerations:
"Great caution is necessarily demanded in determining `fault' in the context of society's efforts to suppress crime. Our Civil Code does not intend, and society could not tolerate, that reasonable efforts towards crime suppression be punished, and therefore curtailed, by civil liability for simple mistake. However, the efforts must be reasonable; the individual remains obliged to act as a reasonable person would, taking into consideration all of the circumstances. `Falseness' and `malice' serve conceptually to emphasize that not every mistake in defending one's self or community against crime is actionable `fault,' but only such mistake as is not reasonably justified by the surrounding circumstances." (Emphasis added.) 292 So.2d at 253.
Whether the defendant acted reasonably depends upon whether he breached his duty to plaintiffs not to so mislead the police by information he gave as to make the police believe they had probable cause under the circumstances to arrest the plaintiffs. We do not believe he breached that duty in his recitation to the investigating officers, as he did not reasonably provide probable cause for the arrest that was made subsequent to the questioning of the plaintiffs.
There is no denying that his merchandise disappeared, which he had a right to report to the police department. If mistakes were made in his recitation of the facts, as found by the trial court,[1] the mistakes were not *849 the critical factors which would have reasonably caused the police to pursue the matter to arrest. As was recently stated by the Second Circuit,
"Reasonable efforts by a citizen toward suppression of crime, even where a simple mistake exists, do not automatically impose civil liability, if all the circumstances indicate the efforts were reasonable. The law should, and does, encourage citizens to report suspected criminal activity to proper authorities." Sapp v. J. A. West Co., 352 So.2d 268, 269 (La.App.2d Cir. 1977).
The decision to arrest was totally independent of defendant's actions. Defendant did not himself file an affidavit against these plaintiffs; in fact, as the evidence clearly shows, he told the policemen that he could not accuse the plaintiffs of taking the bracelet because he did not see them take it. The reason the plaintiffs were arrested falsely was because the police made an independent decision to effect the arrest.
"In general, the distinction upon which the liability of a defendant turns in such cases is the distinction between his merely reporting to a police officer what he has seen or heard, leaving the officer to act on his own investigation or judgment, and actively inducing the arrest or participating in it. [Citation omitted.] . . . The distinction is between merely giving information to the police, leaving them to take such action as they think proper, and directing or participating in the arrest. [Citation omitted.]" Annot., 21 A.L.R.2d 643, 695-696 (1952).
There is no showing that the defendant purposely misled the police into believing, albeit incorrectly and unreasonably, that these plaintiffs took the missing merchandise. It was not shown that the defendant knowingly gave false information to a police officer. The fact that the defendant indicated that there was another customer in the store who came in immediately following the plaintiffs' departure, entering the store before the bracelet would have been replaced in the display case, supports the view that the defendant did not wrongfully attempt to have these plaintiffs arrested. The defendant cannot be held responsible for the police's poor judgment in weighing all the evidence before making an arrest.
It would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no intent to mislead. If the risks to the citizen are too high, a fertile field for criminal suppression will have disappeared.
For these reasons, the judgment of the trial court against Harry Henley is reversed and the petition of Sonya Arellano and Linda McCarthy is dismissed at plaintiffs' cost.
REVERSED.
NOTES
[1] As the trial court provided no specific finding of fact, we cannot presume which specific facts were found in plaintiffs' favor, although the preponderance was obviously found to be in their favor.