365 So.2d 1168 (1978)
Norman Jack FONTENOT, Plaintiff-Appellant,
v.
Freeman LAVERGNE et al., Defendants-Appellees.
No. 6755.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
Stockwell, Sievert, Viccellio, Clements & Shaddock, John S. Bradford, Lake Charles, for plaintiff-appellant.
Jack J. Rogers, Lake Charles, J. Michael Veron, Lake Charles, for defendants-appellees.
Before CULPEPPER, FORET and CUTRER, JJ.
CUTRER, Judge.
Norman Jack Fontenot sues Freeman Lavergne, d/b/a Lavergne's Bail Bonds, and Ron Biggs for damages as a result of an alleged false imprisonment at the instance of the defendants. From a judgment in favor of defendants, plaintiff appeals. We reverse.
This case involves the problem of false imprisonment through mistaken identity due to a similarity of names. Freeman Lavergne was engaged in the bail bond business doing business as Lavergne's Bail Bonds. Employed in the business were Mr. Lavergne's wife, Betty, his daughter, Cheryl McGee, and defendant Ron Biggs. Lavergne's Bail Bonds issued a bond for a Norman Fontenot in the amount of $500.00 resulting from a felony theft charge. The address on Lavergne's information card *1169 showed Fontenot's address as being 615½ Highway 171. Norman Fontenot failed to appear in court and a bench warrant was issued for his arrest. Lavergne was notified of the non-appearance and forfeiture possibility.
On the morning of February 11, 1977, Cheryl "Cookie" McGee was called by plaintiff, Norman Jack Fontenot, and asked if they would issue a bond for plaintiff's girl friend who was in jail on a minor charge. Mrs. McGee testified that she met plaintiff at the City Police Station to attend to the bond. Upon meeting Fontenot she asked him if he had ever been bonded out of jail by Lavergne. He replied that Lavergne had never bonded him out but that he had always used another agency. She told plaintiff that Lavergne's Bail Bonds was looking for a Norman Fontenot who had failed to appear in court. She stated that Fontenot told her that he wasn't the Norman Fontenot they were looking for. Mrs. McGee executed the bond requested by plaintiff.
That afternoon, February 11, 1977, Deputy Carl Beaugh, shift supervisor at the jail, received a call from Mrs. Betty Lavergne, stating that a bench warrant had been issued for Norman Fontenot and that he could be found at 3029 Reidway Street in Lake Charles. Deputy Beaugh checked his warrants and found one for a Norman Fontenot. He ordered the arrest of plaintiff at the Reidway address. The arrest was made and plaintiff was brought to the jail. He continually protested to the deputies that they had arrested the wrong Norman Fontenot. In view of these protests, Deputy Beaugh called Lavergne's Bail Bonds and asked that someone be sent to the jail to identify the person arrested as being the one they had bonded.
Ron Biggs was sent to the jail where he identified plaintiff as being the Norman Fontenot they were looking for and the one that Lavergne's Bail Bonds had bonded. Biggs, in his testimony, testified that he had previously located a Norman Fontenot as living at the Reidway address. He stated that he had not talked with Fontenot and did not know as a fact that the Norman Fontenot at the Reidway address was the Norman Fontenot that had been bonded by Lavergne's Bail Bonds. Biggs stated that he had given the Reidway address to the Lavergne office. Deputy Beaugh testified that when Biggs made the positive identification of plaintiff, he imprisoned plaintiff.
The following morning, Herbert Rhodes, Jr., a friend of plaintiff, visited the jail and talked to the deputies about the mistake in their arrest of the plaintiff. Rhodes testified that he also talked to Freeman Lavergne at the jail and Lavergne insisted that the right man was in jail.
The following morning, Sunday, the shift supervisor at the Calcasieu Parish Jail, Deputy John Scott Doyle, learned of the above situation. He investigated the matter and found that Lavergne's Bail Bonds had issued a bond on Norman Dwayne Fontenot. Deputy Doyle could find no bond on Norman Jack Fontenot (the plaintiff) issued by Lavergne's Bail Bonds. Deputy Doyle concluded that the wrong Norman Fontenot had been arrested and released the plaintiff on Sunday afternoon. On Monday morning Deputy Doyle continued his investigation. He found four warrants for the same charge on Norman Dwayne Fontenot, whose address was learned to be 516½ Highway 171, Lake Charles. He examined the original warrant, the mug shots, and the bonds in his files. (These files were not available to him on Sunday as this division of the Sheriff's Department is closed on that day.) The only bond he could find on Norman Jack Fontenot was signed by J. H. Leger of the Imperial Insurance Company. He further found that the bonds on Norman Dwayne Fontenot were signed by Lavergne's Bail Bonds. This confirmed that the wrong Norman Fontenot had been imprisoned.
The trial court held that the plaintiff had not proven malice by defendants and on this ground judgment was rendered in favor of defendants dismissing plaintiff's suit. Plaintiff appeals.
The issue presented is whether malice is a necessary element of this type of tort.
*1170 The trial court erred in its conclusion that malice is a necessary ingredient to this type of tort. The Louisiana Supreme Court in the early case of Wells v. Johnston, 27 So. 185 (La.1898), where an arrest was made as a result of mistaken identity, held as follows:
". . . Two things are essential to constitute the offense [of false imprisonment]: First, detention of the person; second, the unlawfulness of such detention. The unlawfulness of the detention is the gravamen of the offense. Hence it may be committed without malice on the part of the person causing the detention. It is not necessary that the unlawful act (false imprisonment) be committed with malice or ill will, or even the slightest wrongful intention. Consequently the question of malice is immaterial, except as it may affect the question of damages."
We also find that, as the tort of "false imprisonment" developed, the courts have categorized "false imprisonment" as a type of tort to be decided according to Louisiana's basic tort law found in C.C. art. 2315. Jones v. Simonson, 292 So. 251 (La.App. 4th Cir. 1974), and Arellano v. Henley, 357 So.2d 846 (La.App. 4th Cir. 1978).
In Arellano, the court, in speaking of "false imprisonment", held as follows:
"We are called upon to decide whether these actions on the part of the defendant constituted fault under Article 2315 so as to entitle these plaintiffs to damages for the injuries which they have certainly suffered. This court in Jones v. Simonson, 292 So.2d 251 (La.App. 4th Cir. 1974), aptly set forth the applicable considerations:
`Great caution is necessarily demanded in determining "fault" in the context of society's efforts to suppress crime. Our Civil Code does not intend, and society could not tolerate, that reasonable efforts towards crime suppression be punished, and therefore curtailed, by civil liability for simple mistake. However, the efforts must be reasonable; the individual remains obliged to act as a reasonable person would, taking into consideration all of the circumstances. "Falseness" and "malice" serve conceptually to emphasize that not every mistake in defending one's self or community against crime is actionable "fault," but only such mistake as is not reasonably justified by the surrounding circumstances.' (Emphasis added.) 292 So.2d at 253."
Applying these principles to the facts and circumstances we conclude that defendants were not reasonable in their actions herein. Ron Biggs made a positive identification of the plaintiff as being the Norman Fontenot that Lavergne's Bail Bonds had bonded. He did this even though he admitted in his testimony that he didn't know as a fact that plaintiff was the man they were looking for. Further, Freeman Lavergne insisted they had arrested the right man even though he had no personal knowledge of the identity of plaintiff. The agency was put on notice immediately after the arrest that there existed a question of identity of the arrested person. Also, on the morning before the arrest, plaintiff told "Cookie" McGee, an employee of Lavergne's Bail Bonds, that he was not the Norman Fontenot they were looking for. No steps were taken by the agency to verify identification. Under these circumstances, we conclude that the defendants were clearly at fault in causing the arrest and the imprisonment by their identification without having the personal knowledge to properly do so. For this reason, plaintiff is entitled to recover any damages he may have incurred.
We move now to the consideration of damages. Plaintiff contends that this approximate 48 hours of incarceration caused him to suffer both mentally and physically to the extent that he had to terminate his attendance at McNeese University and also to quit his job with a roofing concern.
Dr. Gilles Morin, a psychiatrist, examined plaintiff, 34 years of age, on June 10, 1977. He testified as follows:

*1171 "In summary, in my opinion, we are dealing with a rather rigid individual, who has had problems with anxiety and depression for a number of years, and was trying to cope by the abuse of alcohol. It may be that the false arrest triggered off a somewhat deeper depression, but I do not feel that this would stop him from functioning or returning to school."
Dr. Morin also stated that plaintiff told him that his girl friend had died a few days before the examination. This plus his drinking could be a cause of the depression which was present when Dr. Morin saw plaintiff.
Dr. Harry S. Snatic saw plaintiff the day after he was released, February 14, 1977, and stated that plaintiff was nervous. He prescribed valium. He also saw plaintiff on other occasions for nervousness and prescribed valium. This physician was not able to say that plaintiff's nervousness was caused by the incarceration. He thought the incarceration may have "shook up" the plaintiff thereby aggravating an existing condition.
The plaintiff testified that he had had problems in his past. He and his wife were to get a divorce in July, 1977. He had drinking problems which led to his being arrested several times.
The physicians' testimony convinces us that plaintiff may have suffered some temporary aggravation of an existing condition but such was not the cause of his termination of college or work. His unlawful incarceration was for a period of approximately 48 hours. We conclude that an award of $4,000.00 for general damages would be adequate. He also will be allowed $118.64 for medical and drug expenses.
For the reasons assigned, the judgment of the district court is reversed, and it is hereby ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Norman Jack Fontenot, and against defendants, Freeman Lavergne, d/b/a Lavergne's Bail Bonds, and Ron Biggs, in solido, in the full sum of $4,118.64, with legal interest thereon from date of judicial demand until paid. All costs, including costs of appeal, are assessed to the defendants.
REVERSED AND RENDERED.