555 So.2d 626 (1989)
Michael FISHER, Edward Rapp and Harry Fisher
v.
LOUISIANA DEPARTMENT OF PUBLIC SAFETY, TFC Ray P. Dauzat, TFC Henry L. Johnson, TFC Matthew Issman and ABC Insurance Company.
No. 88-CA-1669.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 1989.
*627 Glenn Diaz, Chalmette, for plaintiff-appellee.
Paul J. Galuska, New Orleans, for defendants-appellants.
Before SCHOTT, C.J., and CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
Plaintiffs, Michael Fisher, Harry Fisher and Edward Rapp, filed suit for damages arising from the alleged false arrest and assault and battery of Michael Fisher by three Louisiana State Troopers. Named as defendants were the Louisiana Department of Public Safety, the Office of State Police and the three state troopers, TFC Ray P. Dauzat, TFC Matthew Issman and TFC Henry L. Johnson. After a trial on the merits, the district court judge rendered judgment for the plaintiffs and awarded Michael Fisher $40,000.00 and $5,000.00 each to Harry Fisher and Edward Rapp for the actions of the three patrolmen. The defendants appeal. We amend that part of the judgment in favor of Michael Fisher and, as amended, affirm, but we reverse that part of the judgment in favor of Edward Rapp and Harry Fisher.
The trial judge in rendering judgment provided the following reasons for judgment:
The facts of the instant case show that on March 14, 1983, defendants, Louisiana State Troopers Ray Dauzat, Henry Johnson, and Matt Issman were assigned to work the St. Bernard Parish area. Shortly after 8:00 A.M., Trooper Dauzat pulled over Buddy George for speeding on Highway 39 in St. Bernard Parish. Mr. George pulled his vehicle into the Meraux Spur Station and Convenience Store parking lot, stopping near the front door. Officer Dauzat pulled his unit directly *628 behind Mr. George's vehicle. Shortly thereafter, Officer Johnson entered the parking lot and parked his unit next to and to the right of Office (sic) Dauzat's unit.
At this time, Petitioner and part-owner of the Meraux Food Store, Mr. Edward Rapp, noticed that the three vehicles were blocking his customer's access to his store and gas lane. Mr. Rapp exited the store and asked Officer Johnson if he could move the cars because they were interfering with his customer's access to his business. Officer Johnson told Mr. Rapp that he would move his unit, but that Officer Dauzat could not do so until he completed his citation. Officer Johnson then moved his car to the side of the parking lot, and contacted Officer Issman by radio to meet them at their present location.
After moving his vehicle, Officer Johnson followed Mr. Rapp into the store and requested identification from him. Mr. Rapp asked the officer for his reasons, because he stated that he committed no crime other that (sic) to ask the Officers to move their cars.
While Officer Johnson was questioning Mr. Rapp, Officer Dauzat moved his police car as requested. He then entered the store and joined Officer Johnson in questioning Mr. Rapp. At this time, petitioner and also part-owner of the Meraux Food Store, Mr. Harry Fisher, approached the two Officers and Mr. Rapp and asked what was wrong. Officer Johnson told Mr. Harry Fisher to mind his own business and not to interfere. Then, Officer Johnson requested identification from both Mr. Rapp and Mr. Fisher and requested that they step outside to discuss the matter. After several minutes of discussion, they both gave Officer Johnson their drivers license, but refused to step outside the store. Officer Dauzat exited the store and ran the I.D.'s through his police radio. While Officer Dauzat was checking the names through his police radio, Mr. Harry Fisher telephoned the petitioner, Mr. Michael Fisher, and requested that he come to the store.
By the time Michael Fisher arrived at the store, all three state troopers were present in the store questioning Edward Rapp and Harry Fisher. Michael Fisher informed the troopers that he was part-owner of the store and wanted them to leave the store because the disturbance was upsetting his customers.
The record indicates that after several minutes of discussion, Michael Fisher told the troopers that he was a peace officer and if the troopers did not leave, he would call the St. Bernard Sheriff's Office and have them arrested for disturbing the peace. He then asked for the trooper's names and commissions and wrote them down. Michael Fisher then went to his office, which was located in a cubicle behind the check-out counter. Shortly thereafter, Michael Fisher came out of his office and told the officers that they had one minute to leave or he would have them arrested. He then returned to his office and attempted to call the St. Bernard Parish Sheriff's Office. As Michael Fisher was attempting to use the telephone, Officer Dauzat entered his office, grabbed his arm, and told him he was under arrest. Michael Fisher resisted and a scuffle ensued. Officers Johnson and Issman then entered the office and assisted Officer Dauzat in removing Michael Fisher from the office.
The record indicates that the officers used unreasonable force in restraining Michael Fisher. In the process of the scuffle, Officer Johnson grabbed his testicles in order to subdue him. Officer Dauzat choked Michael Fisher, while Officer Issman kicked his legs. Then, Officer Dauzat forced him to the ground face down and began beating his head into the concrete floor until Michael Fisher was no longer able to resist. He was then handcuffed and transported to the St. Bernard Parish Sheriff's Office, where he was booked with the crimes of interfering with state police, resisting arrest, simple battery, and public intimidation.
After reviewing all the evidence, testimony and records, the court finds that *629 the defendants acted unreasonably and seriously interfered with Michael Fisher's privacy interests by arresting him without lawful cause. The court finds that Michael Fisher was not interfering with any police activity, there being no valid police investigation conducted inside the Meraux Food Store. The police investigation ended when the traffic violator, Mr. Buddy George, was summoned and left the premises. The court finds that all subsequent activity on the said premises was without lawful cause and duly interfered with the privacy interests of Michael Fisher, as well as Edward Rapp and Harry Fisher.
There is no doubt that Michael Fisher suffered physical pain as well as great embarrassment, humiliation and mental anguish as a result of the unreasonable conduct on the part of the defendants. The record indicates that Michael Fisher was hospitalized for three days after the incident, suffering from various bruises, cuts, and contusions. Furthermore, the record reflects that Michael Fisher has a good reputation in the St. Bernard community and that the Fisher family is well known and respected throughout the community. After the incident, Michael Fisher suffered mental and emotional distress, the fact being that he was a peace officer and was arrested without lawful cause, imprisoned and treated as a common criminal. He was subjected to ridicule, embarrassment, and humiliation from his family, friends, customers and fellow workers employed with the St. Bernard Parish Sheriff's Office and the District Attorney's Office.
The Court is of the opinion that the sum of Forty Thousand and 00/100 ($40,000.00) Dollars should be and is hereby awarded to Michael Fisher, for his physical pain and suffering, embarrassment, humiliation and mental anguish suffered as a result of the unjustified and unreasonable actions on the part of the defendants, Officers Ray Dauzat, Henry Johnson and Matt Issman.
Furthermore, the Court is of the opinion that the sum of Five Thousand and 00/100 ($5,000.00) Dollars should be and is hereby awarded to Edward Rapp and Five Thousand and 00/100 ($5,000.00) Dollars should be and is hereby awarded to Harry Fisher, respectfully, (sic), for their humiliation, embarrassment and mental anguish suffered as a result of the unjustified and unreasonable action on the part of the defendants, Officers Ray Dauzat, Henry Johnson and Matt Issman.
After reading the trial testimony, the depositions in the record and the appellate briefs in this matter, we note that plaintiffs' and defendants' versions of the facts as they occurred are in dispute. However, adhering to the established principle that an appellate court must give great weight to conclusions reached by the trier of fact, and if there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed unless manifestly erroneous, we adopt the trial judge's findings of fact as set forth in his reasons for judgment. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
On appeal defendants assert two assignments of error. First, they contend the trial court erred in finding them liable for the false arrest of Michael Fisher. They argue that they acted lawfully and pursuant to statutory authority in arresting Michael Fisher. As their second assignment of error defendants argue that the amount of damages the trial judge awarded to the plaintiffs is excessive and not supported by the evidence presented at trial.
LIABILITY
The elements of the tort of false arrest are set forth in O'Conner v. Hammond Police Dept., 439 So.2d 558, 560 (La.App. 1st Cir.1983) as follows:
The tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. Fontenot v. Lavergne, 365 So.2d 1168 (La.App. 3rd Cir.1978). Unlawful detention is restraint without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977); Moss v. Maryland Casualty Company, 392 So.2d 772 (La.App. 3rd Cir 1980).

*630 Thus, if an arrest is made either without any legal process or warrant or under a warrant void and null upon its face, a false imprisonment has occurred. DeBouchel v. Koss Const. Co., 177 La. 841, 149 So. 496 (1933); Cox v. Cashio, 96 So.2d 872 (La.App. 1st Cir.1957). However, if a person is arrested pursuant to statutory authority, there is no liability for damages for false imprisonment. Kyle, 353 So.2d at 971; Gerard v. Parish of Jefferson, 424 So.2d 440 (La.App. 5th Cir.1982), writs denied 430 So.2d 75, 78 (La.1983). The burden is on a plaintiff to prove that the arrest was made without color of legal authority. Cerna v. Rhodes, 341 So.2d 1157 (La.App. 1st Cir. 1976), writ denied 343 So.2d 1067 (La. 1977).
The jurisprudence further establishes that the physical attack of a private citizen by a police officer absent a valid arrest constitutes a battery. Ross v. Sheriff of Lafourche Parish, 479 So.2d 506 (La.App. 1st Cir 1985) citing Norrell v. City of Monroe, 375 So.2d 159 (La.App. 2nd Cir.1979); Malone v. Fields, 335 So.2d 538 (La.App. 2nd Cir.1976).
In the instant case, defendants contend that Michael Fisher's arrest was lawful and that the force used to arrest him was justified. Defendants reason Fisher's arrest was lawful because he allegedly interfered with their investigation of plaintiffs Rapp and Harry Fisher inside Meraux Food Store. We disagree.
The evidence in the record before us supports the trial judge's finding that Michael Fisher did not impede any police investigation because, at the time, the defendants' investigation of Rapp and Harry Fisher was not valid. The sole purpose for defendants' presence on the property of Meraux Food Store was the issuance of a speeding ticket to Buddy George. The record is devoid of any evidence which suggests that either Rapp or Harry Fisher interfered in any manner with defendants' stop and citation of George.
LSA C.Cr.P. art 215.1(A) allows a law enforcement officer to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. Trooper Johnson testified that Rapp simply approached him in the parking lot and asked him to move the police vehicles because they were blocking access to the gasoline pumps. He testified Rapp did not question Dauzat's stopping of the speeding motorist. Furthermore, Johnson testified that when he went into the food store to question Rapp he did not suspect that the plaintiff had committed, was committing or was about to commit a crime. Although there is evidence which indicates that Rapp was impatient with his request and that his manner and tone of voice were abrupt, such actions were not enough to justify Johnson's and Dauzat's temporary questioning of either Rapp or Harry Fisher.
We agree with the trial court that the defendants' valid police investigation ended immediately after the traffic violator was stopped, cited and left the premises and that the subsequent activity inside the food store was without lawful cause.
Defendants also reason that Michael Fisher's arrest was justified because he refused to produce identification when requested to do so, citing La.C.Cr.P. art. 215(A)(1). The record reflects that Harry Fisher had forewarned his brother of the problem with the three defendants. Michael Fisher came into the store and identified himself by name and as the owner of the store. He had a camera around his neck and told the defendants to leave or he would have them arrested. Michael Fisher then asked them for their names and commissions and proceeded to write them down on a pad. When he went into his office to call the local police Dauzat grabbed his arm and the scuffle began. The evidence shows that after the scuffle started, Michael Fisher told the three defendants they were under arrest. This comment apparently angered the defendants, but there is nothing in the record which indicates that prior to it Michael Fisher had done any act to arouse a suspicion that he had committed, was committing or was about to commit *631 an offense. While Fisher's manners and remarks may have justifiably angered the troopers as an affront to their authority, such actions and language do not provide a valid reason for an arrest. City of New Orleans v. Lyons, 342 So.2d 196 (La. 1977). Therefore, we find the trial court was correct in concluding that the force used by the defendant troopers unreasonable and their arrest of Michael Fisher unwarranted under the circumstances.
QUANTUM
The defendants contend the awards made by the trial court were excessive in light of the evidence produced at trial.
Before a Court of Appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review for articulated reason be considered excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979). Only after a determination of abuse has been made can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) amount which is reasonably within the discretion afforded the court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence. Coco v. Winston Industries, Inc., supra.
We will first consider the award of $40,000.00 to plaintiff Michael Fisher.
In the instant case, neither the trial court's judgment nor reasons for judgment itemize the damages comprising the $40,000.00 award. Rather, the aforementioned reasons for judgment state Michael Fisher was awarded $40,000.00 for his "physical pain and suffering, embarrassment, humiliation and mental anguish ...". The only evidence relative to special damages included in the record are the medical bills introduced by plaintiffs. The bills reflect that the expenses incurred by Michael Fisher for the treatment of his injuries resulting from the altercation amounted to $2,256.43. Because the evidence of special damages is minimal, we assume the bulk of the award was for general damages.
General damages in the present case include damages for pain and suffering, assault and battery and false arrest. Damages for false arrest include those for humiliation and embarrassment, worry and inconvenience and mental anguish. Hughes v. Standidge, 219 So.2d 6 (La.App. 4th Cir.1969); writ denied, 254 La. 4, 222 So.2d 63 (1969); cert. denied, 396 U.S. 887, 90 S.Ct. 177, 24 L.Ed.2d 162.
After reviewing the record we conclude the trial judge abused his discretion in awarding plaintiff $40,000.00 as a lump sum award for damages.
Dr. Bruce Samuels testified on behalf of plaintiff. He testified that when he examined Michael Fisher at Chalmette General Hospital on March 14, 1983, plaintiff had several contusions, abrasions and a laceration on the head. According to Dr. Samuels, plaintiff also had bilateral subjunctiva hematomas which meant blood had accumulated between the sac of clear tissue around the eye and the sclera giving the eyes a bloody appearance. He testified that Michael Fisher had swelling in the neck area which was the result of being grabbed or choked around the neck, had no respiratory problems, but had an elevated blood pressure. Although plaintiff was anxious and nervous upon arrival at the hospital, he was conscious and alert. After examining plaintiff, Dr. Samuels admitted him into the hospital to run a series of tests to determine if he had suffered any internal injuries. A CT scan of the brain, an esophogram of the larynx and x-rays of plaintiff's chest, skull, facial and nasal bones and cervical spine revealed no internal injuries or fractures. After being examined *632 by an ophthalmologist and otolaryngologist, Michael Fisher was discharged from the hospital two days later on March 16. As follow-up treatment, plaintiff visited Dr. Samuels' office on two more occasions, March 26 and April 6, 1983. During the visit on March 26, Michael Fisher complained only of occasional headaches. When Dr. Samuels examined plaintiff again on April 6, 1983, plaintiff had slight swelling in the neck. In order to alleviate the swelling, he gave plaintiff an injection of a steroid. Dr. Samuels testified that other than the occasional headaches and neck pain, plaintiff had no existing injuries and his blood pressure was normal. He further testified that plaintiff did not complain of depression, anxiety, sleeplessness or any other mental disorder during either office visit. Dr. Samuels testified that he last treated Michael Fisher on April 6. At trial, plaintiff testified that for a couple of months after the incident he felt depressed at times but did not seek the help of a psychiatrist. Likewise, there is nothing in the record which demonstrates that Michael Fisher saw any other doctors or had any injury-related problems, mental or physical, after he last saw Dr. Samuels on April 6, or that he suffered any permanent injuries as a result of the false arrest and assault and battery.
After considering the effects of the false arrest and assault and battery upon plaintiff in terms of the physical and mental pain and suffering and its impact upon his personal and professional life, we believe that the lump sum award of $40,000.00 is so excessive as to be an abuse of discretion. Accordingly, following Coco v. Winston Industries, Inc., supra and its progeny, we limit our modification so as to decrease the award only to an amount that is the maximum which would not have constituted such abuse. Therefore, we conclude the most the trial court could award to plaintiff Michael Fisher in its discretion is the following: $10,000 for the false arrest including the humiliation, embarrassment, worry, inconvenience and mental anguish suffered by him as a result of it; $15,000 for the assault and battery upon plaintiff including his pain and suffering in connection with it, and $2,256.43 in special damages as evidenced by the medical bills in the record or a total lump sum award for both special and general damages of $27,256.43.
We now address the trial judge's award of $5,000.00 each to plaintiffs Edward Rapp and Harry Fisher for their "humiliation, embarrassment and mental anguish". In their original petition filed in this matter, plaintiffs Rapp and Harry Fisher allege damages for assault and their mental and emotional distress caused by the beating of their brother-in-law (brother) in their presence. Clearly, the record does not support an award of damages for assault as there is no evidence that the defendants assaulted either Rapp or Harry Fisher. As to their claim for damages for mental anguish, we find the trial judge erred in awarding $5,000.00 to both Rapp and Harry Fisher. We can find no cases in our jurisprudence, and plaintiffs have cited none in their briefs, where plaintiffs, who are the brother-in-law and brother of Michael Fisher, are entitled to recover damages for mental anguish caused by witnessing the battery of Michael Fisher. Hardin v. Munchies Food Store, 521 So.2d 1200 (La.App. 2d Cir.1988), writ denied 523 So.2d 1321 (La.1988).
For the foregoing reasons, we amend the judgment of the trial court insofar as it awarded plaintiff Michael Fisher $40,000.00 by reducing the award to $27,256.43, and as amended that part of the judgment is affirmed. We reverse the judgment of the trial court insofar as it awarded damages to plaintiffs Edward Rapp and Harry Fisher.
AMENDED IN PART, AS AMENDED AFFIRMED; REVERSED IN PART.