748 So.2d 417 (1999)
SPORTSMAN STORE OF LAKE CHARLES, INC.
v.
SONITROL SECURITY SYSTEMS OF CALCASIEU, INC., Cassidy Insurance Agency and Stewart Keith Cayton.
No. 99-C-0201.
Supreme Court of Louisiana.
October 19, 1999.
*418 John Gregory Bergstedt, Lake Charles, for Applicant.
Michele S. Caballero, Milo Addison Nickel, Jr., Lake Charles, for Respondent.
Douglas Lanaux Grundmeyer, Jena Smith-Malfatti, Gregory Joseph Walsh, Wilbur Anthony Toups, III, New Orleans, for Advantage Capital Partners IV, Advantage Capital Partners III, Advantage Capital Partners II, Advantage Capital Partners V, (Amicus Curiae).
Robert Alexander Jarred, Lafayette, for Burglar and Fire Alarm Association (Amicus Curiae).
John E. Gagliano, R. Scott Caulkins, Arlington, VA, Loretta Gallaher Mince, James Richard Swanson, New Orleans, for Sonitrol National Dealer Association, Sonitrol Corporation (Amicus Curiae).
VICTORY, J.[*]
In this case, we are presented with the issue of whether the Third Circuit Court of Appeal properly applied the manifest error standard of review. After reviewing the record and the applicable law, we reverse the court of appeal and reinstate the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
In March of 1989, Gary Klumpp ("Klumpp"), owner of the Sportsman Store of Lake Charles (the "Sportsman Store"), a retail store and pawn shop which was expanding to sell jewelry, as well as guns, contacted Stewart Keith Cayton ("Cayton"), owner of Sonitrol Security Systems of Calcasieu, Inc. ("Sonitrol"), concerning the design and installation of a security system for a new location of his business at a busy intersection.
After inspecting the premises, Cayton discussed three options with Klumpp: a digital dialing system, a direct wire system, and a cellular system. The cellular system was immediately rejected by Klumpp because it was too expensive. Cayton explained to Klumpp that in the direct wire system, the security system's central monitoring station would know immediately if the secured premises' phone lines were cut and the operator on duty would then contact the police. But in the digital dialing system, Cayton explained that the central monitoring station monitors only the information sent by the system over the existing telephone line, and thus the operator at the station will not know if the telephone line has been cut. However, approximately one minute after the line is cut, the siren will sound. Cayton testified that he recommended that Klumpp purchase the slightly more expensive direct wire system[1] because of the danger that burglars could cut through the exposed telephone wires on the side of the building thereby cutting off communication with Sonitrol's central alarm station. Cayton testified that he told Klumpp that if he chose the digital system, the telephone wires were not protected and that Sonitrol was prohibited by law from touching the phone lines.
*419 Klumpp testified at trial that in spite of this explanation, he understood that the only difference between the two systems was that the direct wire system had two telephone lines, whereas the digital dialing system had one line, but that as two lines were just as easy to cut as one, he chose the digital dialing system. He also testified that he purchased the system because Cayton told him that he had a one million dollar insurance policy that would cover Klumpp's losses if there was an undetected break-in.
Cayton proceeded to design and install the digital dialing system at the Sportsman Store. Because of the high volume of vehicular traffic at the intersection where the store was located and because Klumpp wanted the siren to be as loud as possible, the siren was installed on the outside of the store above the front door. The siren was encased in a 16-gauge steel cabinet and screwed into the wall with four metal screws. There were two tamper switches on the siren and all the wires to the siren were either inside the store or inside the store wall. Klumpp signed the contract for the design, and installation of the system and monitoring services, which contained a limitation of damages clause, as well as a limited manufacturer's warranty.
Sometime between the evening of June 21 and the morning of June 22, 1990, the Sportsman Store was burglarized. It is undisputed that the burglars first cut the telephone wire on the side of the building and the telephone wire at the telephone pole and then pried the siren off the wall, pulled the siren wires out of the wall and cut them. They then proceeded to steal numerous items from the store.
The Sportsman Store filed suit against Sonitrol and Cayton seeking damages for negligent design and installation of the system, negligent representations as to the adequacy of the security system, and negligent and/or intentional misrepresentation concerning the one million dollar insurance coverage. In addition to the claims against Sonitrol and Cayton, the Sportsman Store made a claim against Cassidy Insurance and Real Estate Agency, Inc., an insurance company that Klumpp had purportedly purchased property insurance from, for failure to procure a property insurance policy containing theft coverage. This claim was settled prior to trial.
At trial, Klumpp and Cayton testified to the facts as stated above and each party presented expert testimony regarding the design and installation of the system. Plaintiffs expert was Dr. David Salmon, who was accepted as an expert in the field of security and evaluation of burglar alarm systems. He testified that the Sonitrol system as installed deviated from industry standards in the following respects: (1) the exposed phone lines were not concealed or covered in conduit; (2) the wires of the siren were not encased in conduit and the siren was attached to the building with metal screws, rather than welded; and (3) the owner was not told to either have the phone lines covered or to call the phone company to do something with the phone lines. He gave his opinion that these deviations in combination rose to the level of gross negligence.
Defendants presented two experts, Steve Midkiff, who had worked for Sonitrol of Orlando for 14 years, and Cayton. Both were qualified as experts in the design and installation of Sonitrol security systems. Midkiff testified that the system was properly designed and installed in accordance with Sonitrol standards, that the siren was properly mounted and placed, that the owner has the responsibility to either hide or cover phone lines, and that when he sees exposed phone lines, he recommends the use of another system, such as cellular. Cayton testified that the design and installation of the system met both Sonitrol and the National Burglar Alarm Association standards. He further testified that tests performed on the system after the burglary indicated that the system initiated the alarm but the phone lines could not deliver the signal to the *420 central station because they had been cut, and that the siren was sounding when the siren wires were cut.
The trial court found that the defendants were not liable for any damages to plaintiff based on the following findings of fact and conclusions of law:
1. The Sonitrol Security System in place at the Sportsman Store at the time of the burglary was properly designed and installed and there was no failure in the system in its design or installation.
2. The Sportsman Store of Lake Charles, through its agent/officer, Gary Klumpp, chose the configuration and application of the security system as installed in the premises and was solely responsible for the features on the security system as installed in the said premises.
3. The public phones lines which were cut and thereby prevented the Sonitrol Security System from signaling the alarm to central station, were installed and configured by the phone company and it is a standard in the security industry that security system installers are not even supposed to touch these lines during installations.
4. The siren bell installed in this premises was installed correctly and in accordance with applicable standards and reasonable care was taken to protect the bell from tamperers.
5. The Sonitrol Security System installed in the Sportsman Store properly functioned at the time of the break-in in accordance with the design for the system chosen and purchased by the Sportsman Store.
6. Neither SONITROL SECURITY SYSTEMS OF CALCASIEU, INC. nor STEWART KEITH CAYTON provided any insurance coverage which would be applicable to the losses allegedly sustained by the plaintiff.
7. The Sonitrol Client Contract, admittedly signed by Gary Klumpp, clearly and unambiguously confirmed Mr. Klumpp's understanding of the system's dependence upon public telephone lines and further confirmed that Sonitrol was not an insurer nor provided any insurance coverage pursuant to their monitoring services.
8. It is evident to this Court that the Sportsman Store of Lake Charles was made aware of the drawbacks and benefits of the security system they chose. Therefore, SONITROL SECURITY SYSTEMS, INC. and its agent are not responsible for the damages resulting from the burglary at the Highway 14 location.
The Third Circuit Court of Appeal reversed and, based on the testimony of plaintiff's expert, found that Sonitrol and Cayton had negligently designed and installed the system because it did not comply with industry standards that required Sonitrol to either warn Klumpp that the phone lines should be encased in conduit or to call the phone company and have the phone lines encased or hidden. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 98-851 (La.App. 3 Cir. 12/23/98), 725 So.2d 74. The court of appeal rejected the defense experts' testimony because they were only qualified as Sonitrol experts and not industry experts, thus making the plaintiff's expert testimony uncontradicted. Id. Further, the court of appeal found that the defendants' liability was not limited by the terms of the contract because their conduct was grossly negligent and because the limitation of damages clause was not brought to Klumpp's attention. Id. The court of appeal affirmed the trial court's finding that the defendants did not engage in any fraudulent conduct regarding the one million dollar insurance policy.[2] *421 Id. Finally, the court of appeal awarded plaintiff $458,000.00, plus interest, in damages. We granted the defendants' writ. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-C-0201 (La.3/26/99), 739 So.2d 799.

DISCUSSION
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., supra at 853; Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, supra at 844-45. But where such factors are not present, and a fact-finder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id. (Cites omitted.)
The trial court found that the Sonitrol system was properly designed and installed, that it functioned properly at the time of the break-in, and that Klumpp was made aware of the danger presented by the exposure of the phone lines. Therefore, Sonitrol and Cayton were not found liable for any damages as a result of the burglary. This finding was consistent with the testimony of Midkiff, who testified that the system was properly designed and installed according to Sonitrol standards, and Cayton, who testified that the system also met the standards of the National Fire and Burglar Alarm Association, and, that he recommended that Klumpp purchase the direct wire system because of the danger that burglars could cut through the exposed phone wires.
However, the court of appeal reversed, finding that Sonitrol and Cayton had negligently designed and installed the system because it did not comply with industry standards that required Sonitrol to either warn Klumpp that the phone lines should be encased or call the phone company and have the phone lines encased or hidden. This finding was reached by rejecting the defense experts' testimony as being based only on Sonitrol, as opposed to industry, standards, and by accepting the plaintiffs expert's interpretation of industry standards because it was "uncontradicted." This was erroneous.
Initially, we point out that although the plaintiffs expert purported to analyze the installation of this security system under current industry standards, nowhere did the plaintiff present these standards in any specific way. Instead, Dr. Salmon said that industry standards were dictated by common industry practice and procedures and usually are promulgated in books and publications and in industry guides and through normal application at a local level.
*422 Although the plaintiff offered no books, publications, or industry guides containing the industry standards into evidence, Dr. Salmon described these standards as follows:
... you need to try to put as much of the operating system of the alarm, especially if it's not protected, inside that protective zone again; in other words, buy us time. Everything we look at in security regarding burglar alarms or security procedures is measured in time, how long can we delay them getting in, getting out, whatever we're trying to prevent. In this particular case both in this publication I reference here, Protection of Assets, my practice in years in this business, the phone line should have been protected, and you can do that in several ways, but the phone line needed to be protected as best we could from the installation to the central monitoring point.
He then gave his opinion that the system breached these industry standards because, in addition to the phone wires not being encased or hidden and the siren not being more securely fastened to the wall, Cayton had a duty to tell Klumpp to either have the phone lines covered or to call the phone company and tell them to either hide or cover the phone lines.
However, Cayton testified that he told Klumpp that the digital system would not relay a signal to the central alarm station if the phone lines were cut, that his phone lines were exposed, and that Sonitrol was not authorized to touch the phone lines. Because of this danger, he recommended that Klumpp purchase the slightly more expensive direct wire system, but Klumpp refused. We agree with the trial court that this satisfied any duty Cayton may have had in this regard and that Cayton was not required to tell Klumpp specifically "if you want the phone lines covered, call the phone company." Common sense and logic would dictate that when Klumpp was advised that his lines were exposed, that the system was vulnerable and that Cayton could not touch the lines, it would be Klumpp's responsibility to have the lines protected, either by contacting the telephone company or by some other method.
Based upon the testimony of both defense experts, the trial court found that the siren was installed correctly and in accordance with applicable standards and reasonable care was taken to protect the bell from tamperers. Again, the court of appeal overturned this finding, holding that the trial court was bound to accept the testimony of the plaintiffs expert over the testimony of the defense experts. However, the trial court was free to reject the plaintiffs expert testimony that Sonitrol should have welded the siren to the wall and covered the siren wires in metal conduit. We find that based on the testimony of the defense experts in the record, the trial court did not commit manifest error in finding that the siren was properly installed.

CONCLUSION
In sum, after reviewing the record in its entirety and applying the appropriate standard of appellate review, we hold that the trial court did not commit manifest error in finding that Sonitrol and Cayton were not negligent in their design and installation of the system at the Sportsman Store. Our holding obviates the need to address the court of appeal's invalidation of the limitation of damages clause in the Sonitrol contract based on its finding that Sonitrol and Cayton were grossly negligent[3] and its application of waiver of warranty requirements to the limitation of damages clause.[4]

*423 DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court is reinstated.
REVERSED.
JOHNSON, J., dissents.
KNOLL, J., dissents for the reasons by the court of appeal.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] The additional cost for the direct wire system was a $120.00 installation fee plus other labor charges and an installation fee and monthly phone line charges to the phone company.
[2] We agree with the lower courts on this issue. Further, we note that plaintiff did not urge at trial or on appeal that it was entitled to the alleged $1,000,000.00 insurance policy. Further Cayton testified, and he told Klumpp, that the policy would be on top of the $5,000.00 limited manufacturer's warranty and would be applicable if the $5,000.00 limited manufacturer's warranty was applicable. However, because, in the case of a non-dedicated phone line system, the manufacturer warranted only that the siren would sound if the phone line was cut, and all evidence adduced at trial indicates that it did, the $5,000.00 limited manufacturer's warranty apparently would not be applicable.
[3] Under Civil Code art. 2004, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party."
[4] The court of appeal invalidated the limitation of damages provision in the Sonitrol contract because it was not brought to Klumpp's attention by relying on cases that are applicable only to waivers of warranty. See, e.g., Matthis v. Couvillion, 613 So.2d 1024 (La. App. 3 Cir.1993); Thibodeaux v. Meaux's Auto Sales, Inc., 364 So.2d 1370 (La.App. 3 Cir. 1978); Dixie Roofing of Pineville, Inc. v. Allen Parish School Bd., 95-1526 (La.App. 3 Cir. 5/8/96), 690 So.2d 49, writs denied, 96-2084 (La.11/8/96), 683 So.2d 276 and 96-2100 (La.l 1/8/96), 683 So.2d 277 (also holding that a warranty which precludes recovery of consequential damages must be made a part of the sales contract in order to be effective). Compare La. C.C. art. 2005 with La. C.C. art. 2548.