NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1219


SHERYL GASPARD MCBRIDE

VERSUS

STEVEN ANTHONY MCBRIDE


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2005-2853
HONORABLE PHYLLIS M. KEATY, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese,
Judges.


**AFFIRMED.**


Scott M. Hawkins
Chris Villemarette
Hawkins & Villemarette, L.L.C.
107 Regency Square
Lafayette, Louisiana 70508
(337) 233-8005
Counsel for Defendant/Appellant:
    Steven Anthony McBride

Kay Karré Gautreaux
Attorney at Law
405 West Convent Street
Lafayette, Louisiana 70501
(337) 232-7747
Counsel for Plaintiff/Appellee:
    Sheryl Gaspard McBride

**SULLIVAN, Judge.**

Ex-husband appeals the trial court's determination that he did not prove he was no longer obligated to support his ex-wife. We affirm.

### *Facts*

Steven and Sheryl McBride divorced in January 2006. In July 2006, Steven was ordered to pay Sheryl permanent spousal support in the amount of $1,700 per month. Thereafter, he filed a motion to terminate that support, claiming his obligation to support Sheryl was extinguished because she was living with a man "in the manner of married persons" and because she had sufficient income and/or assets with which to support herself, as provided in La.Civ.Code art. 115.

After a hearing, the trial court denied Steven's motion, finding no merit in either of his claims. It ordered Steven to pay Sheryl $1,500 per month in final periodic support. Steven appeals, assigning as error the trial court's determinations that Sheryl was not cohabiting with her boyfriend in the manner of married persons and did not have sufficient income and/or assets to support herself.

### *Discussion*

### *Cohabiting in the Manner of Married Persons*

Steven's first assignment of error pertains to La.Civ.Code art. 115's provision that an ex-spouse's obligation to support his former spouse is extinguished when a court determines his former spouse "has cohabited with another person . . . in the manner of married persons." He urges that the trial court erred in finding Sheryl was not cohabiting with her boyfriend and points to the testimony of Sheryl's neighbor and a private investigator he hired to monitor Sheryl's boyfriend's coming and going at her home. The neighbor testified that she saw Sheryl's boyfriend's truck parked

1

at her home at night and in the morning several days at a time and that Sheryl's boyfriend came and went like he lived with Sheryl. The private investigator testified that Sheryl's boyfriend's truck was there consistently late in the evening and early in the morning for extended periods of time.

Sheryl, her and Steven's daughter, her mother, her boyfriend, and her boyfriend's sister testified that Sheryl's boyfriend visited her frequently but did not live with her and that her boyfriend lived with his sister and her husband. Additionally, Sheryl explained in response to questions asked by the trial court that due to the nature of her boyfriend's work, there were times he left his vehicle at her home while he was working offshore or on land jobs out of town. The testimony of Sheryl and her witnesses was supported with documentation which substantiated that her boyfriend lived with his sister and her husband in Crowley.

The trial court determined that the evidence established that Sheryl and her boyfriend had a dating relationship, which included sexual relations, and that Sheryl's boyfriend stayed overnight at her home on occasion, but it was insufficient to establish that Sheryl was cohabiting with her boyfriend.

Appellate courts review factual determinations of trial courts pursuant to the manifest error—clearly wrong standard, which precludes the setting aside of a finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Driscoll v. Stucker*, 04-589 (La. 1/19/05), 893 So.2d 32. The trial court accepted Sheryl's and her witnesses' explanations and supporting evidence that Sheryl's boyfriend did not live with her like a husband instead of Steven's witnesses' testimony and supporting evidence. We cannot reverse this credibility determination unless there is objective evidence which contradicts Sheryl's and her witnesses'

2

testimony or the record establishes that their testimony on these issues is implausible. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201 (La. 10/19/99), 748 So.2d 417.

No objective evidence clearly contradicts Sheryl's evidence that her boyfriend does not live with her, and the record does not establish that her or her witnesses' testimony is not plausible. Therefore, we cannot reverse the trial court's findings on this issue.

### *Sheryl's Need for Support*

Steven next argues that the trial court erred in finding Sheryl proved a need for support. He urges that Sheryl has income, substantial liquid assets and/or funds, and other unreported income, which are sufficient to support her.

Sheryl was formerly a legal secretary and earned a good salary. During her marriage to Steven, she was involved in an automobile accident, which injured her neck and back. She had two surgeries, one on her back and one on her neck, that limited her ability to sit, stand, and lift; she continues to have pain in her back. Sheryl can no longer perform her job duties as a legal secretary, but she has found employment with an employer who has accommodated her physical limitations in various ways. She is paid $15 per hour and mileage for errands that she runs for her employer; she does not have sick leave, vacation, or paid holidays.

Sheryl testified that she typically works approximately thirty hours a week, but her employer allows her to work more if needed to meet her financial obligations. In this regard, Sheryl also testified that while she was working more hours than she had previously just prior to the hearing in this matter, she did so because of her financial needs. She explained, however, that the increased work was affecting her physically.

3

Steven also argues that Sheryl received $90,000 in cash when she refinanced the family home, which she got in the community property settlement, but can only account for $25,000. Sheryl testified that she refinanced the home to pay Steven what she owed him as a result of their community property partition. The principal amount of Sheryl's new loan was $162,000; it was distributed as follows:

1) approximately $76,000 paid off the existing loan;

2) approximately $8,000 for fees associated with the new loan;

3) $52,500 to Steven; and

4) $25,500 to Sheryl.

Sheryl testified that she used the loan proceeds to pay down some of her consumer debt and to reimburse her mother money that her mother had loaned her.

Lastly, Steven argues that Sheryl made numerous deposits and withdrawals from her bank accounts which indicate she has another source of income available to her to satisfy her financial needs. Counsel for Steven pointedly questioned Sheryl at length on all of these issues, i.e., her ability to work and earn income, her finances, the refinance of her home, the sources of various deposits she made, and many of her expenditures. The trial court accepted Sheryl's explanations regarding her finances and her ability to support herself as credible. As previously explained, we cannot reverse this credibility determination unless there is objective evidence which contradicts Sheryl's testimony or the record establishes that her testimony on these issues is implausible. *Id.*

Sheryl did not testify with specificity concerning some of the unidentified sources of money deposited into her accounts and expended by her; however, Steven did not present any objective evidence that contradicts her claims, and nothing in the

4

record renders her explanations implausible. In fact, documentation of Sheryl's loan establishes that Steven's claim that she received $90,000 in cash when she refinanced her home has no merit. Accordingly, we cannot disturb the trial court's conclusion.

### *Decree*

The judgment of the trial court is affirmed. All costs are assessed to Steven McBride.

**AFFIRMED**.

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.