NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 21-366

STACY WALKER

VERSUS

OLD REPUBLIC INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 133659
HONORABLE SUZANNE DE MAHY, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of John E. Conery, D. Kent Savoie, and Sharon Darville Wilson, Judges.

MOTION TO DISMISS DENIED;
JUDGMENT AFFIRMED.

**Rebecca A. Cunard**
**Attorney at Law**
**9214 Interline Ave.**
**Baton Rouge, LA 70809**
**(225) 925-2978**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Stacy Walker**

**Frank Edward Barber**
**Attorney at Law**
**2111 Highway 14**
**New Iberia, LA 70560**
**(337) 357-1334**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Stacy Walker**

**Richard Edward King**
**Olivia Y. Truong**
**Melchiode Marks King, LLC**
**639 Loyola Ave, Suite 2550**
**New Orleans, LA 70113**
**(504) 336-2880**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Elmer Candy Company**
    **Mario Bell**
    **Amerisure Mutual Insurance Company**

**SAVOIE, Judge.**

In this auto accident case, Plaintiff, Stacy Walker, appeals the trial court's award of damages following a bench trial. In addition, Defendants, Mario Bell, Elmer Candy Company, and Amerisure Insurance Company, submitted a motion to dismiss Ms. Walker's appeal, which is also pending before this Court.

For the reasons that follow, we deny Defendants' Motion to Dismiss and affirm the trial court's judgment in this matter.

### Defendants' Motion to Dismiss

Following Ms. Walker's notice of appeal, her counsel requested from this court, and was granted, two extensions of time to submit an appellate brief. The second requested extension was based upon counsel's symptoms and treatment associated with Covid-19. Following this extension, Ms. Walker's brief was due August 11, 2021; however, her brief was not filed until August 17, 2021.

On August 23, 2021, Defendants filed a motion with this court seeking to dismiss Ms. Walker's appeal or to strike her untimely brief. In opposition, Ms. Walker argues that the late filing was due to her counsel's staff's misunderstanding of various deadlines while her counsel was ill. She notes that her brief was filed on the believed deadline and that she had no intention of abandoning her appeal.

Uniform Rules—Courts of Appeal, Rule 2–12.12 states as follows with respect to untimely briefs:

> If the brief on behalf of any party is not filed by the date that the brief is due, the party's right to oral argument shall be forfeited. The court may also impose other sanctions including, but not limited to, dismissal of the appeal when the appellant does not file a brief as provided for in Rule 2-8.6.

Uniform Rules—Courts of Appeal, Rule 2–8.6 states in pertinent part as follows with respect to abandonment of civil appeals:

For civil appeals, if an appellant does not file a brief within the time prescribed by Rule 2-12.7 or any extension thereof granted by the court as provided by Rule 2-12.8, a notice shall be transmitted by the clerk to counsel for the appellant, or to the appellant if not represented, that the appeal shall be dismissed 30 days thereafter unless a brief is filed in the meantime. If an appellant does not file a brief within 30 days after such notice is transmitted, the appeal shall be dismissed as abandoned.

In the instant matter, Defendants suggest dismissal is an appropriate sanction under Uniform Rules—Courts of Appeal, Rule 2–12.12 in light of Ms. Walker's untimely brief. However, this court did not provide the notice contemplated by Uniform Rules—Courts of Appeal, Rule 2–8.6 following Ms. Walker's lapsed briefing deadline; rather, Ms. Walker's brief was filed before any such notice was issued. Therefore, we do not find dismissal of Ms. Walker's appeal or otherwise striking her appellate brief to be appropriate under the circumstances, and we deny Defendants' motion.[1]

## **Mrs. Walker's Appeal**

Factual and Procedural Background

On February 6, 2018, Ms. Walker was in a car accident with Mario Bell. According to Ms. Walker, Mr. Bell was driving a truck, made an improper left turn, and struck her 2016 Nissan Altima on the passenger's side. At the time of the accident, Mr. Bell was in the course and scope of his employment with Elmer Candy Company.

Ms. Walker filed a petition for damages against Mr. Bell, Elmer Candy Company, and Amerisure Insurance Company, who insured Elmer Candy Company at the time. Ms. Walker alleges that she sustained injuries to her neck and back as a result of the accident.

---

[1] We note that Ms. Walker's request to reinstate oral argument after the filing of her untimely brief was previously denied by this court, as was her motion to reconsider that ruling.

The matter was initially set for a jury trial; however, after the requisite jury bond was not posted, Defendants sought to strike the jury trial scheduled with the trial court and convert it to a bench trial. Defendants' motion was granted, and a bench trial was held February 8, 2021. The parties stipulated to Mr. Bell's liability, leaving only the issue of damages for trial.

Ms. Walker testified at trial. She also submitted the depositions of her treating physicians, Dr. Joseph Bozzelle and Dr. Mark McDonnell, which were accepted into evidence by the trial court. Ms. Walker also submitted copies of various medical bills for treatment rendered following the accident, which were accepted into evidence.

The trial court also heard testimony from Dr. Neil Romero, who conducted an independent medical examination upon request of Defendants and order from the trial court. His written report dated January 8, 2021, was accepted into evidence as well. Ms. Walker's counsel also called Dr. McDonnell to testify at trial as a rebuttal witness.

After reviewing the evidence and considering the opinions of Dr. Bozzelle, Dr. McDonnell, and Dr. Romero, the trial court rendered judgment in favor of Ms. Walker, finding that she was injured in the accident. However, it limited her recovery to medical treatment rendered from the date of the accident through February 14, 2019. This was in line with Dr. Romero's opinion that the accident caused a flareup of Ms. Walker's underlying degenerative condition in her cervical spine and lumbar spine, and that after receiving significant relief from a cervical epidural steroid injection and two lumbar epidural steroid injections, with the second being on February 14, 2019, Ms. Walker's symptoms had returned to "baseline[,]" or to the same level they were prior to the accident.

Ultimately, the trial court awarded Ms. Walker with $96,000.00 for past, present, and future mental pain and suffering, and $37,068.50 for past medical expenses, for a total damages award of $133,068.50.

On appeal, Mrs. Walker asserts the following assignments of error:

I.     The trial judge erred in contravening the pre-trial order and allowing a witness to use exhibits produced on the day of trial in his testimony, which severely prejudiced the plaintiff.

II.     The trial judge erred in basing her ruling almost in complete conformity with the opinions of the physician hired by the insurance company, Dr. [Neil] Romero, and disregarding plaintiff's physicians who treated her injuries resulting from the accident.

III.     The trial judge erred in not awarding sufficient damages based upon the evidence presented.

Assignment of Error Number 1

In her first assignment of error, Ms. Walker takes issue with the trial court allowing Dr. Romero to testify at trial, not only as to his opinion provided in his January 8, 2021 report but also as to his opinion following his subsequent receipt and review of Ms. Walker's medical records from her general practitioner with Iberia Comprehensive Community Health Center ("Iberia Comprehensive"). The trial court initially allowed Dr. Romero to testify only as to his opinions prior to reviewing the Iberia Comprehensive records, and then later, after hearing argument on the issue, the trial court allowed him to testify regarding the Iberia Comprehensive records over objection from Ms. Walker's counsel.

As stated in *McCauley v. McCauley,* 20-27, p. 10 (La.App. 3 Cir. 10/21/20), 305 So.3d 981, 989, concerning our review of a trial court's evidentiary decisions:

> As a general rule, trial courts are afforded great discretion concerning the admission of evidence, and their decisions to admit or exclude evidence should not be reversed on appeal in the absence of an abuse of their discretion. *Medine v. Roniger*, 03-3436 (La. 7/2/04),

4

879 So.2d 706. When reviewing such alleged errors, we must determine whether the complaining party has shown that the ruling complained of "was erroneous and whether the error prejudiced the defendant's cause, for unless it does, reversal is not warranted." *State in Interest of A.S.*, 19-248, p. 15 (La.App. 1 Cir. 9/4/19), 285 So.3d 1129, 1141.

On appeal, Ms. Walker first argues that she was "blindsided" by Dr. Romero's review of her own records from Iberia Comprehensive and his related testimony because the records were not provided to her forty-five days before trial as required by the trial court's September 19, 2020 pretrial order applicable to all civil jury cases. Rather, according to Ms. Walker, she was not provided with the Iberia Comprehensive records until the day of trial, they were provided in electronic format only, and she was only given minimal time by the trial court to review the records.

As noted by the trial court during trial, Defendants' counsel sent a copy of the Iberia Comprehensive records via email to both of Ms. Walker's counsel at 1:58 p.m. on January 21, 2021, which was over two weeks prior to trial. While Ms. Walker's counsel argued at trial that they did not see the email, and "it might have gone to a junk folder[,]" the trial court stated "I'm not necessarily inclined to believe that it went to a junk folder for both attorneys if ya'll have exchanged email contact before." The trial court further explained in its written reasons for ruling that it:

> allowed Dr. Romero to testify regarding his opinion after reviewing the plaintiff's medical records from her general practitioner with Iberia Comprehensive because the plaintiff has access to the records and also because the defendant provided the records in their entirety to the plaintiff prior to trial. The medical records from Iberia Comprehensive were not entered as exhibits and therefore did not need to be included on the exhibit list.

5

Ms. Walker also argues on appeal that Dr. Romero initially concluded that Ms. Walker had reached maximum medical improvement ("MMI") from injuries sustained in the accident on the date of her examination, which was January 8, 2021; but, after reviewing the Iberia Comprehensive records, Dr. Romero impermissibly "changed the opinion contained in his report and stated that Ms. Romero was MMI on February 14, 2019[,]" without first providing an updated report or discovery responses.

However, Dr. Romero's report dated January 8, 2021, clearly states that Ms. Walker "was likely at MMI for the aggravation secondary to the motor vehicle collision on February 6, 2018, *after undergoing the second the lumbar injection*[,]" which was on February 14, 2019. (Emphasis added.) Therefore, we find no support for Ms. Walker's argument suggesting that Dr. Romero impermissibly changed his opinion as to MMI.

Dr. Romero suggested that the additional records from Iberia Comprehensive were indicative of chronic neck and back problems prior to the accident, rather than his initial observation of sporadic symptoms, and that this would "certainly call into question whether anything is related to the accident or if this is just a continuation of pre-existing symptoms." However, the trial court ultimately found that Ms. Walker was injured in the accident. Specifically, it concluded that Ms. Walker attained MMI on the date of her second lumbar injection, February 14, 2019, as suggested by Dr. Romero's initial report and testimony related thereto.

We note, as did the trial court, that Ms. Walker's own medical records were at issue and they were available to her counsel at any time upon request. The records were also provided to her by Defendants' counsel two weeks prior to the

trial. In addition, the trial court did not rely on Dr. Romero's suggestion after review of the Iberia Comprehensive records that Ms. Walker's history of chronic pain symptoms indicated by the Iberia Comprehensive records called into question whether she sustained any injuries in the accident. Therefore, we fail to see any reversible error on the part of the trial court in allowing Dr. Romero's testimony.

Assignment of Error Number 2

In her second assignment of error, Ms. Walker takes issue with the trial court's reliance on Dr. Romero's opinion concerning causation of injuries, rather than on her treating physicians' opinions, arguing that her treating physicians' opinions should have been given more weight.

We review the trial court's acceptance of one expert's testimony over another's in accordance with the following:

> It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.,* 99-201, pp. 6-7 (La. 10/19/99), 748 So.2d 417, 421 (internal citations omitted).

7

In the instant case, the medical evidence in the record reveals that, on February 7, 2018, the day following the accident, Ms. Walker presented to the emergency room at Iberia Medical Center where she complained of headaches and neck pain. She was diagnosed with a cervical strain. She then began chiropractic treatment for both neck and back pain with Dr. Adel Malahmeh with Iberia Chiropractic Clinic on February 9, 2018.

After reporting minimal relief following two months of chiropractic treatment, Ms. Walker saw Dr. McDonnell with Louisiana Spine Surgery on June 5, 2018. Dr. McDonnell documented her complaints of neck and back pain, with her back pain being worse than her neck pain. After physically examining her, he noted muscle spasms in both her back and neck, as well as restricted and painful extension in her back. Dr. McDonnell further reviewed Ms. Walker's cervical and lumbar MRIs from February 27, 2018. He noted that she had small disc herniations in her neck at four different levels, as well as facet hypertrophy in her lumbar spine at L3-4 and L4-5, and a central disc protrusion at L3-4. Dr. McDonnell's recommended plan following his examination was that Ms. Walker undergo a lumbar epidural steroid injection because her low back pain was not responding to chiropractic treatment.

On June 12, 2018, Ms. Walker was involved in an incident where she tripped over a hole in her yard as she was getting out of her car, and she fell. Thereafter, she went to the emergency room at Iberia Medical Center with complaints of low back pain.

On August 15, 2018, Ms. Walker began treatment with Dr. Joseph Bozzelle, a pain management specialist with St. Francis Medical Clinic. Ms. Walker reported to him that she had been in an auto accident in February 2018, and she

8

had complaints of right neck pain radiating to her shoulder, arm, and hand, as well as numbness, and low back pain radiating to her right hip, leg, and foot. She did not report her trip and fall from June 2018. Dr. Bozzelle also noted her prior history of arthritis. After completing a physical examination that was consistent with her complaints, and reviewing Dr. McDonnell's report noting an L3-4 disc bulge, Dr. Bozzelle prescribed medication to Ms. Walker and recommended that she begin physical therapy, which she did.

Ms. Walker's next visit with Dr. Bozzelle was on September 12, 2018. During that visit, Dr. Bozzelle recommended that she schedule both cervical and lumbar spine injections. Dr. Bozzelle saw her again on October 10, 2018, and on November 7, 2018, with continued complaints of back and neck pain. On December 27, 2018, Ms. Walker underwent a lumbar left paramedian interlaminar epidural steroid injection ("ESI") at L3-4. She then underwent a cervical interlaminar ESI at C7-T1 on January 20, 2019. She noted improvement in her cervical spine symptoms following the injection, but due to continued lumbar spine symptoms, Dr. Bozzelle recommended a second lumbar spine injection. On February 14, 2019, Ms. Walker had a right paramedian transforaminal ESI, which provided her with relief.

Ms. Walker did not return to see Dr. Bozzelle again until July 5, 2019. After he evaluated her, he recommended a third lumbar ESI. On July 11, 2019, she had a right paramedian transforaminal ESI at L3-4.

Ms. Walker's next visit with Dr. Bozzelle was on August 15, 2019, where she reported that the third lumbar injection had given her significant relief. She also reported that she was attending physical therapy as directed. Dr. Bozzelle evaluated her again on September 12, 2019. Ms. Walker reported lasting relief

since the last injection, but she stated that she wanted to have it repeated. Ms. Walker had another lumbar ESI at L-3 and L-5 on December 5, 2019.

On January 2, 2020, Dr. Bozzelle performed a diagnostic bilateral L3-5 medial branch block. Ms. Walker then had several follow up visits with Dr. Bozelle on January 16, 2020; February 17, 2020; March 4, 2020; April 21, 2020; May 18, 2020; June 16, 2020; and July 9, 2020. Then, on July 15, 2020, she had a right lumbar ESI at L-3 and L-5. After several more follow up visits with Dr. Bozzelle, Ms. Walker underwent a confirmatory bilateral medial branch block at L3-5 on November 9, 2020.

On January 8, 2021, Ms. Walker saw Dr. Romero for an independent medical examination, which was ordered by the trial court at the request of Defendants' counsel. Dr. Romero reviewed Ms. Walker's medical history both before and after the February 6, 2018 auto accident. Dr. Romero noted Ms. Walker's history of prior cervical and lumbar spine symptoms, a "long history of flare-ups of musculoskeletal pain" beginning in February 2009, as well as cervical and lumbar spine X-rays prior to the accident that showed mild arthritic and degenerative changes. He also noted that on August 13, 2017, Ms. Walker was diagnosed with sciatica when she presented to the emergency room at Iberia Medical Center with pain complaints. Dr. Romero noted in his January 8, 2021 report that August 13, 2017, was Ms. Walker's last reported flareup prior to the accident and that she had recovered from it at the time of the accident.

Dr. Romero also noted that when he examined Ms. Walker on January 8, 2021, she was no longer reporting any cervical spine symptoms and "only reports occasional lumbar spine symptoms which are, for the most part, tolerable." Dr. Romero then went on to conclude that; "[b]ased on her history and her examination

10

today, it does appear that the motor vehicle collision likely resulted in another aggravation of her mild underlying degenerative condition in her cervical and lumbar spine." He further stated:

> I do believe, with the significant improvement that she saw with the initial injections, that she was likely at MMI [Maximum Medical Improvement] for the aggravation secondary to the motor vehicle collision on February 6, 2018[,] after undergoing the second lumbar epidural steroid injection [on February 14, 2019]. There was a significant delay before she underwent the third epidural steroid injection. It is likely that she could have suffered another flare-up of her underlying condition in that timeframe and thus it is reasonable to only relate one cervical epidural steroid injection and two lumbar epidural steroid injections to the motor vehicle collision from February 6, 2018. . . . I would not recommend any further formalized treatment for either her cervical or lumbar spine secondary to the motor vehicle collision from February 6, 2018.

At trial, Dr. Romero was accepted as an expert witness, and he testified consistent with his report, noting Ms. Walker's numerous visits to Iberia Medical Center's emergency room dating back to February 2009 for issues such as neck and low back pain consistent with musculoskeletal flareups throughout time. He further testified that Ms. Walker acknowledged this history to him during his examination of her on January 8, 2021.

Dr. Romero also noted that Mrs. Walker had two documented prior auto accidents – one in August 2014, the other in September 2016 – after which she presented to Iberia Medical Center's emergency room with complaints of neck pain, shoulder pain, and thoracic back pain symptoms, as well as the trip and fall incident that occurred in June 2018. He testified that Ms. Walker acknowledged the prior car accidents and trip and fall to him during his examination.

Dr. Romero also testified that his physical examination of Ms. Walker on January 8, 2021, consisted of a cervical and lumbar spine exam and that "[t]he exam was very benign." He noted that she had a good range of motion, "really no

pain at all in her cervical spine," and that she was not reporting any cervical spine symptoms. In addition, he noted that her lumbar exam was consistent with her reported symptoms, that she had "very mild, limited extension," and that she:

> experience[d] a little bit of pain whenever she hyperextended her back. Other than that, her exam was pretty much pain free. She reported occasional low back pain, but only mild pain; but it seemed like the pain was a little bit worse whenever she extended her back, which would be consistent with mild arthritic issues that she had in her back. She had some degenerative changes in her facet joints.

He then testified that, in his professional opinion, Ms. Walker attained maximum medical improvement as to injuries sustained in the auto accident at issue on February 19, 2019, which was the date of her second lumbar injection. He explained that by "maximum medical improvement," he meant "back to baseline, from what she had told me prior to the accident." He further explained his opinion as follows:

> It's chiropractic treatment. She has a slip and fall in there which further aggravates things, but she undergoes a cervical, the two lumbar injections, . . . . And then she seems to be doing well. And then it's not until July of 2019, which is, . . . you know, five months later that she has the other injection.

> And if you look at these records from prior to this . . . there are flare-ups that are one and a half, two months where, you know, she's having flare-ups. So, to me, that's kind of where you draw the line and say, okay, well, she's having these flare-ups. You know, she's having more injections, but you're having nine-month gaps in treatment and whatnot. I think her flare-ups are consistent with her previous history.

> I do think the accident aggravated her underlying condition, assuming that she wasn't still having symptoms from August of '17, prior to the accident. . . so that's what I attributed to the accident.

After providing testimony concerning the initial opinions provided in his January 8, 2021 report, Dr. Romero also testified regarding his subsequent review of Ms. Walker's medical records from Iberia Comprehensive from December 15,

2009, through August 13, 2019. He testified that these records were consistent with those from Iberia Medical Center and revealed a history of similar complaints of flareups of neck pain, back pain, sciatica, and upper and lower extremity symptoms.

However, Dr. Romero explained that Ms. Walker's visits to Iberia Comprehensive were more frequent than her visits to Iberia Medical Center, with December 27, 2017, as her last documented visit prior to the accident at issue. Dr. Romero noted that during this visit, Ms. Walker reported low back, left hip, and lower extremity pain, and was prescribed narcotic pain medication. It was also documented that she was having trouble obtaining an appointment at a pain management clinic. Dr. Romero testified that this made him "rethink" his initial opinion that Ms. Walker was experiencing sporadic aggravations prior to the accident and that the Iberia Comprehensive records were indicative of a more chronic pain issue. He also testified that this would "certainly call into question whether anything is related to the accident or if this is just a continuation of pre-existing symptoms."

After Ms. Walker saw Dr. Romero on January 8, 2021, she then saw Dr. Bozelle on January 12, 2021. Dr. Bozzelle testified that on this visit, Ms. Walker had complaints of bilateral lower back pain with radicular symptoms, and had "tenderness over the cervical parspinals, which appeared to be facetogenic pain and decreased -- limitations in range of motion . . . a positive Spurling's still on the left. And everything else looked -- seemed relatively normal." He further noted that, on exam, Ms. Walker had muscle spasms in her back, a "positive straight leg raise that indicated L3 and L4 radicular pattern and then positive pain over the facets in the lower back in the areas that we did the blocks."

13

Dr. Bozzelle then testified that, in his expert medical opinion, Ms. Walker's condition was a result of the February 8, 2018 accident. He explained the basis of his opinion as follows:

> Well, she was in the accident. She has had what appears to be some periodic problems before that, but she's had this accident and her pain was pretty much worsened by this accident when she presented to me and she's -- she didn't have the same pain. And then one -- the other key here is she's had these MRIs that had all these disc herniations as well.

Dr. Bozzelle explained that by "periodic problems," he meant her history of arthritis. Dr. Bozzelle testified before that there were no other periodic problems that he was considering.

Dr. Bozzelle was then asked about whether he had reviewed any of Ms. Walker's medical records prior to her first visit with him on August 15, 2018. He testified that he "likely had a report from Dr. McDonnell. But other than that, I think that's all I may have had at that point." He also explained that "a lot of times when the patient presents I don't have a lot of that stuff [medical records] available, so I do rely on what the patient tells me[.]"

Dr. Bozzelle then testified that he did not recall Ms. Walker telling him about her prior car accidents in 2014 and 2016, or about her trip and fall accident in June 2018. He stated that he "would like to know that history[, but] [i]t doesn't always necessarily factor into what my opinion is[.]" He further stated that without having medical records pertaining to those accidents, he "wouldn't be able to tell you" if they were "causing what she has now[,]" and he "would need to review that with Ms. Walker."

Ms. Walker then saw Dr. McDonnell again on January 13, 2021. This was the second time she saw Dr. McDonnell, with her first visit with him being on June

5, 2018, as noted above. Dr. McDonnell's January 14, 2021 deposition was entered into evidence. Therein, he explained that he had not treated Ms. Walker, as she was being treated by Dr. Bozzelle and that he "just saw her twice."

Dr. McDonnell testified in his deposition that during the January 13, 2021 visit, Ms. Walker reported that she had no permanent or lasting relief of more than a week after each of her low back injections. Ms. Walker also described her low back pain at that time as severe and "rated [it] a 10 out of 10." Dr. McDonnell explained that Ms. Walker had a "sitting intolerance" and could not walk more than ten minutes. Following his physical examination of her, Dr. McDonnell noted that "[s]he still had the lumbar paraspinal muscle spasm and painful range of motion, especially in extension[,]" as well as painful flexion and "some sacroiliac inflammation."

Dr. McDonnell also testified that he had reviewed Ms. Walker's December 12, 2020 MRI. He indicated that the L3-4 disc protrusion was a little smaller than it was in the February 2018 MRI, facet joint hypertrophy was still present, and there were small disc bulges at L2-3, L4-5, and L5-S1 that were not "as visible" on the February 2018 MRI. Dr. McDonnell then testified that he did not believe that the injections and medical branch blocks were providing her with any lasting relief, and, therefore, his recommendation going forward was for her to have a lumbar discogram test because he did not believe that the L3-4 disc was going to respond to any further non-surgical treatment.

Dr. McDonnell further opined that Ms. Walker's cervical and lumbar problems were caused by the accident, that the lumbar impairment is ongoing, and that the cervical spine was much less of a problem.

When asked about his review of Ms. Walker's medical history prior to her first visit with him, Dr. McDonnell stated that he had digital records from her chiropractor and Iberia Medical Center emergency room, as well as the MRI report and films. He also received records from Dr. Bozzelle prior to the January 2021 visit.

Dr. McDonnell further testified that Ms. Walker reported to him that she was never involved in any prior auto accidents, and that she did not have any previous spine problems. However, he explained that his evaluation would not have been affected by whether she had prior auto accidents because he "was describing what conditions she had at the time [he] saw her[.]"

In addition, Dr. McDonnell was not aware of Ms. Walker's June 2018 trip and fall accident prior. Although he stated that he received additional records from Iberia Medical Center prior to his January 2021 visit with Ms. Walker, he also stated that he did not specifically recall seeing anything pertaining to the trip and fall. When asked whether the trip and fall affected his opinion as to what injuries were caused by the auto accident at issue, Dr. McDonnell stated that he would need to look at Ms. Walker's medical records in order to be able to comment.

Dr. McDonnell was also called to testify at trial as a rebuttal witness, following Dr. Romero's testimony. He testified that, in his opinion, Ms. Walker's current cervical and lumbar symptoms were the result of injuries sustained in the February 8, 2018 car accident and that she had not reached maximum medical improvement with respect to those injuries. He further testified as to the future treatment he believed Ms. Walker would need.

After weighing the testimony and evidence presented, the trial court ultimately rendered a judgment consistent with Dr. Romero's testimony. In so ruling, the trial court stated:

> The Court weighed the defense IME doctor's testimony greater than the two plaintiff doctors because the defense IME doctor, Dr. [Neil] Romero, stated that he considered the plaintiff's entire medical history when reaching his medical opinion. The Court believed that the medical opinions of the doctors testifying on behalf of the plaintiff were deficient in that the plaintiff failed to inform those two doctors of her medical history and also the doctors failed to seek out her previous medical records from her previous emergency room visits or question the plaintiff/patient about any of her previous medical history or seek out her medical records from her general practitioner.
>
> Dr. Mark McDonnell testified on rebuttal for the plaintiff that his opinion would not change after hearing the testimony of Dr. Romero. However, the Court finds that Dr. McDonnell did not fully consider the plaintiff's full medical history or fully review records from the plaintiff's general practitioner.
>
> . . . .
>
> The Court found that any medical treatment received by the plaintiff after February 14, 2019[,] was not due to any injuries she sustained in the accident, based on the testimony of Dr. [Neil] Romero. He testified that in his opinion, the injuries suffered by the plaintiff due to the accident had diminished after her February 14, 2019 injections and that any pain/issues after that date were considered her normal flare ups she had been suffering with prior to the accident.

After reviewing the record, we find ample support for the trial court's decision to attribute more weight to the opinion of Dr. Romero, who fully reviewed and considered all Ms. Walker's prior history. Therefore, the trial court's decision to credit his opinion over that of Dr. Bozzelle and Dr. McDonnell was not manifestly erroneous.

Assignment of Error Number 3

On appeal, Ms. Walker also seeks an increase in damages awarded, suggesting that she should be awarded the full amount of medical bills incurred,

17

which was $112,070.45, as well as future medical expenses in accordance with Dr. Bozzelle's testimony. Ms. Walker also argues that "[a] fair award for past pain and suffering would have been $250,000."

Because we affirm the trial court's conclusion that medical treatment rendered after February 14, 2019, was not causally related to the accident at issue, we likewise affirm the trial court's refusal to award medical expenses incurred after that date and/or future medical expenses.

With respect to general damages, we review the trial court's award based on the following standard:

> General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. *Boswell v. Roy O. Martin Lumber Co., Inc.*, 363 So.2d 506, 507 (La.1978); *Anderson v. Welding Testing Lab., Inc.*, 304 So.2d 351, 352 (La.1974). . . .

> An appellate court reviews a trial court's general damage award using the abuse of discretion standard. *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 335 (La.1976). The trier of fact is afforded much discretion in independently assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 834 (La.1991). An appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337, 1340 (La.1993); *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993) (the fact finder's discretion in awarding general damages is vast and should rarely be disturbed); *Reck v. Stevens*[,] 373 So.2d 498, 501 (La.1979). To determine whether there has been an abuse of discretion by the fact finder, the reviewing court looks first to the facts and circumstances of the particular case. *Theriot,* 625 So.2d at 1340; *Reck*, 373 So.2d at 501. Only if a review of the facts reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. *Reck*, 373 So.2d at 501; *Anderson*, 583 So.2d at 834; *Youn*, 623 So.2d at 1261. In a review of the facts, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. *Theriot*, 625 So.2d at 1340; *Reck*, 373 So.2d at 501. It is important to note, however, that prior awards are only a guide. *Theriot*, 625 So.2d at 1340.

*Miller v. Lammico,* 07-1352, pp. 27-28 (La. 1/16/08), 973 So.2d 693, 711.

18

In the instant case, Ms. Walker suggests an increase in general damages is warranted based on her testimony that she hurt "[a] lot more" after the accident and that daily activities such as walking, cooking, mopping, dusting, and sleeping, were adversely affected by her pain. She also suggests that an increase in damages is proper because, despite Dr. Romero's testimony, she needed medical care after February 14, 2019, to address injuries sustained in accident, and will need future medical care as well.

Again, we affirm the trial court's conclusion that any medical care rendered to Ms. Walker after February 14, 2019, was not caused by injuries sustained in the accident at issue. Further, we cannot say that the trial court abused its discretion in awarding $96,000.00 in general damages for an aggravation of pre-existing degenerative lumbar and cervical spine issues that required medical treatment for just over a year. Therefore, we affirm the trial court's award of damages.

## DECREE

For the reasons stated above, Defendants' Motion to Dismiss is denied, the ruling of the trial court is affirmed, and costs of this appeal are assessed to Plaintiff, Stacy Walker.

**MOTION TO DISMISS DENIED; JUDGMENT AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2–16.3, Uniform Rules, Courts of Appeal

19